**AFFIRM; and Opinion Filed July 23, 2013.**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-12-00428-CR**

**JUSTIN TRAVIS LIGHTFOOT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Collin County, Texas**
**Trial Court Cause No. 002-84257-2011**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Myers

Appellant Justin Lightfoot was charged by information with driving while intoxicated and pleaded not guilty. He was convicted by the jury and sentenced by the trial court to thirty days in jail and a ninety day suspension of his driver's license. In one issue, appellant argues his rights under the Confrontation Clause were violated. We affirm.

### BACKGROUND AND PROCEDURAL HISTORY

At trial, the State presented testimony from Algia Bizor, the Department of Public Safety trooper who arrested appellant for driving while intoxicated and operated the machine that tested appellant's breath specimen. The State then called Lori Fuller, a "technical supervisor" at the Southwestern Institute of Forensic Sciences (SWIFS), to testify regarding the Intoxilyzer 5000 machine Bizor used to test appellant's breath specimen. Outside the presence of the jury, defense counsel raised a Confrontation Clause objection to Fuller's testimony, and then took

Fuller on voir dire to demonstrate that her testimony would violate appellant's rights under the Confrontation Clause.

Under voir dire examination, Fuller testified that she was one of three technical supervisors at SWIFS that oversee the evidentiary breath testing program for "area 23," which, as Fuller later explained to the jury, includes Dallas, Collin, and Denton counties. She testified that it was another supervisor, Terry Robinson, who performed the various inspections on the machine during the thirty-day period before and after the test in question, signed the "Breath Test Technical Supervisor Affidavit" regarding the accuracy of the test done in this case,[1] and performed the monthly "acetone" checks and "solution" changes on the machine. Fuller also testified that the machine "broke" in April of 2011, the month before appellant's May 14, 2011 intoxilyzer breath test.

The defense also offered into evidence various intoxilyzer machine maintenance records that Fuller brought to the hearing.[2] Defense counsel cited rule 803(6) of the Texas Rules of Evidence, the business records exception to the hearsay rule, *see* TEX. R. EVID. 803(6), as a basis for introducing the records. Counsel stated, "I think that [the maintenance records] would be offered as [sic] business record purposes." The court admitted the records "for this hearing only" on that basis.

After listening to further arguments from counsel and considering various legal authorities, the trial court asked the State for an offer of proof "because I want to hear exactly what it is you're proffering from [Fuller]." Fuller began by describing her experience with the

---

[1] Department of Public Safety trooper Bizor testified and was subject to cross-examination regarding his operation of the intoxilyzer machine that tested appellant's breath sample.

[2] The records include on-site inspection logs for thirty days before and after the test in question, a test information log that contains a list of all the tests performed on the machine during the thirty days before and after appellant's test, a list of daily modem checks performed each weekday morning of the month when the instant test was conducted, the "reference analysis solution certificate" of the specific solution that was used on the machine in this case, "instrument notes" from when the machine was taken out of service, and the "instrument certificate" and "corresponding documentation" for the machine.

breath intoxilyzer machine, i.e., that she was a certified technical supervisor responsible for the maintenance of the Intoxilyzer 5000. She explained the range of procedures and protocols used to ensure the machine is in valid working order, and described the use of both on-site and remote inspections. Fuller testified that on-site inspections require the technical supervisor to go to the location of the machine to make sure it is working properly, and on-site inspections occur at least once a month. She added that remote inspections take place every weekday morning and involve a computer calling the machine and remotely running diagnostic and calibration checks. Additionally, Fuller testified that a technical supervisor reviews the results of the inspection to monitor the machine on a daily basis.

Fuller identified State's exhibit four as a copy of appellant's original breath "test records printed out by the instrument" on May 14, 2011. She testified that a printed breath-test slip was an indication the machine was operating properly. During the breath test, a "reference analysis" or "quality check" is performed in the middle of each test to indicate that the machine is "capable and can read a known alcohol concentration within a given range." The results of this reference analysis or quality check are displayed on the face of the breath-test slip. There is an "allowable tolerance" for a valid test result. In this case, the breath-test slip from appellant's breath test showed a proper reference check. Based on the maintenance data, the breath-test slip, and her experience and training, Fuller's opinion was that the machine "was working properly on the date that this test was conducted and was fully capable of giving valid results."

On cross-examination, Fuller testified that the machine used in this case was put into service after being repaired by another technical supervisor, Terry Robinson. Fuller's knowledge of the machine being taken out of service, repaired, and put back into service was based on the maintenance documents created by Terry Robinson. But other information Fuller relied on (i.e., the on-site inspection reports that showed the actual dates the machine was tested and the testing

results) was compiled by her from SWIFS's computer database.

The trial court overruled appellant's Confrontation Clause objection. The court noted that although Fuller's opinion that the Intoxilyzer 5000 machine was working properly and capable of giving an accurate testing result was based on maintenance records and logs she did not prepare, her opinion went beyond "parroting what the maintenance records show[ed]." She drew an additional conclusion based on the maintenance records and her knowledge of the intoxilyzer machine that it "was capable of doing what it said."

Fuller testified in front of the jury that she was familiar with the operation and maintenance of the Intoxilyzer 5000 machine, the "scientific theory" behind it, and was certified by the Texas Department of Public Safety as a technical supervisor. She also testified that she was partially responsible for the machine's maintenance, which included physical on-site inspections that occurred once a month. An on-site inspection was performed on the machine in this case on May 9, 2011, five days before appellant's breath was tested, and the machine was found to be working properly. No repairs were required on the machine between May 9 and the next on-site inspection, which occurred on June 7, 2011. Asked for her opinion, based on her training and experience, regarding the intoxilyzer machine's "operational condition" on May 14, 2011, Fuller testified: "This instrument was working properly on the date that this test was conducted and was fully capable of giving valid results." Fuller then discussed the "reference analysis" or quality checks that are periodically performed on all intoxilyzer machines, and testified that the breath-test slip in this case, State's exhibit four, showed the machine was working properly on the day in question. Fuller also testified that, according to appellant's breath-test slip, his two breath samples showed, respectively, 0.163 and 0.166 grams of alcohol per 210 liters of breath.

On cross-examination, the defense questioned Fuller regarding her training, experience, the scientific theory behind the intoxilyzer machine, its operation, and the testing procedures. Fuller acknowledged Terry Robinson performed the May 9, 2011 on-site inspection of the intoxilyzer machine, and that the reason for this inspection was the machine needed to be reinstalled after it broke down. Fuller also testified that Robinson was the supervisor responsible for the machine's maintenance during the months of April and May, 2011.[3] But Fuller insisted she could answer questions regarding repairs made to the machine because she had Robinson's maintenance notes and had performed similar repairs on other intoxilyzer machines.

The jury ultimately convicted appellant of driving while intoxicated. The trial court sentenced him to thirty days in jail and suspended appellant's driver's license for 90 days.

### DISCUSSION

In his only issue, appellant argues his rights under the Confrontation Clause were violated because the trial court overruled his objection to testimony from a "technical supervisor" at the SWIFS regarding the alcohol breath test and whether the intoxilyzer machine was in working order and able to produce valid test results.

Under the Confrontation Clause of the Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment,[4] "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. In *Crawford v. Washington*, the United States Supreme Court concluded that "testimonial" evidence is inadmissible under the Sixth Amendment unless the witness who made the testimonial statement either (1) takes the stand to be cross-examined or (2) is unavailable and the defendant had a prior opportunity to cross-examine him. 541 U.S. 36, 54

---

[3] Fuller stated that Robinson continues to work for SWIFS, and is employed at a SWIFS laboratory in Dallas County.

[4] *See Pointer v. Texas*, 380 U.S. 400, 403 (1965).

(2004). In *Melendez–Diaz v. Massachusetts*, the Court concluded that a forensic analyst's report prepared in connection with a criminal investigation or prosecution (a report identifying a substance as cocaine) is testimonial in nature and therefore subject to the Confrontation Clause. 557 U.S. 305, 328 (2009).

In *Bullcoming v. New Mexico*, 564 U.S. ——, 131 S.Ct. 2705, 2710 (2011), the Court addressed "surrogate" testimony regarding forensic reports in a driving while intoxicated case. The forensic analyst assigned to test Bullcoming's blood sample created and signed the "Report of Blood Alcohol Analysis." *Id*. At trial, however, the State called a different analyst who was familiar with the laboratory testing procedure but did not participate in or observe the testing on Bullcoming's blood sample. *See id*. at 2709. The Court noted that the records were for testimonial purposes as indicated on the documents that Bullcoming was charged with the crime and the results of the record were certified for use in court. The Court then concluded that admission of the forensic analyst's report concerning blood alcohol concentration was a violation of Bullcoming's right to confrontation because a "surrogate" analyst, rather than the analyst who prepared the report, testified from the report. *Id*. at 2715–16.

In a subsequent plurality opinion, however, the Supreme Court concluded that admission of expert testimony regarding the results of DNA testing performed by a non-testifying analyst did not violate the Confrontation Clause. *See Williams v. Illinois*, 567 U.S. ——, 132 S.Ct. 2221 (2012). In *Williams*, the witness relied on a DNA profile procured from a third-party laboratory, Cellmark, that had performed the DNA testing before a suspect was identified in the rape investigation. *Id*. at 2227-28, 2234. The plurality concluded Williams's rights were not violated because the expert's statement that the DNA profile (which was never admitted into evidence) produced from semen found on the victim's vaginal swabs was not offered to prove the truth of the matter asserted. *Id*. at 2227-28, 2231. Instead, it explained the basis of the witness's

conclusion that the profile matched Williams's DNA. *See id.* The plurality stated:

> When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause. Applying this rule to the present case, we conclude that the expert's testimony did not violate the Sixth Amendment.

*Id.* at 2228. The Court distinguished *Melendez-Diaz* and *Bullcoming* by explaining that the report was used only to explain the basis for the expert's opinion; thus, it was not used to establish its truth. *Id.* at 2232. In both *Melendez-Diaz* and *Bullcoming*, the certificates were introduced into evidence for substantive purposes. *Id.* at 2232-33. The Court also concluded that even if the report produced by Cellmark had been admitted into evidence, there would have been no Confrontation Clause violation because it was created before there was a specific suspect. Consequently, it was not "inherently inculpatory" or created for use against the petitioner. *See id.* at 2228.

More recently, in *Jamerson v. State*, 383 S.W.3d 309, 313 (Tex. App.—Dallas 2012, no pet.), we concluded, citing *Williams*, that the opinion testimony of a forensic biologist that appellant was conclusively linked to DNA found on a cigarette butt and on the outside of a gardening glove did not violate the Confrontation Clause. Although the witness did not create the underlying DNA reports that supported her opinion, as the "technical reviewer" assigned to the case, she was familiar with each step of the complex testing process and performed her own analysis of the data to compare with the DNA analyst's to confirm that the analysis was correct. *Id.* at 312. "Her testimony was an explanation of her work in the case, rather than an after-the-fact explanation" of the work of the DNA analyst that performed the testing. *Id.* at 313. In addition, neither the witness nor the DNA analyst had any way of knowing whether the DNA

testing in the case would incriminate or exonerate appellant. *Id*.[5]

Appellant argues his rights under the Confrontation Clause were violated because the trial court allowed Fuller to testify regarding the alcohol breath test and whether the intoxilyzer machine was in working order and able to produce valid test results on the day in question. Yet the individual who performed the actual maintenance on the machine and repaired it when it broke down, Terry Robinson, was not called to testify. Appellant asserts he is entitled to know "exactly what was done and without the actual [technical supervisor] we will never know."

Appellant was not deprived of his Confrontation Clause rights here by the testimony of Fuller and the lack of testimony of Robinson. The opportunity for cross-examination is not boundless. *Jamerson*, 383 S.W.3d at 313. The Confrontation Clause does not mandate "anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Melendez–Diaz*, 557 U.S. at 311 n.1. Appellant had a sufficient opportunity to cross-examine Fuller regarding her training, experience, knowledge of the testing procedures, familiarity with the pertinent scientific theory, and the fact that she did not perform the maintenance on the intoxilyzer machine that was used to test appellant's breath, or repair when it broke down.

Like the expert witnesses in *Williams* and *Jamerson*, Fuller testified regarding documents she did not prepare. Furthermore, those documents (i.e., the maintenance records and repair logs for the Intoxilyzer 5000 machine) formed part of the basis for Fuller's opinion that the machine was in working order and able to produce valid test results on the day in question. But when Fuller referenced the maintenance records and logs during her testimony, she did so for the limited purpose of explaining the basis for her opinion, not to show the truth of the matters asserted. Nor were the maintenance and repair records prepared for testimonial purposes, but

---

[5] In *Jamerson*, the defense, not the State, admitted the lab report into evidence. *Id.*

–8–

rather were documentation of the ordinary maintenance and repair of the equipment. Indeed, notwithstanding appellant's reliance on *Bullcoming*, this case is different from other recent cases where we followed *Bullcoming* because, as the trial court pointed out, Fuller did not serve as a mere conduit for another technical supervisor's conclusions. Instead, she testified regarding what she independently observed and concluded—based her own experience and after reviewing the maintenance records and logs. *Cf. Burch v. State*, No. 05–10–01389–CR, 2012 WL 2226456, at *5-6 (Tex. App.—Dallas June 8, 2012) (not designated for publication), *affirmed*, No. PD-0943-12, 2013 WL 3196934 (Tex. Crim. App. June 26, 2005) (admission of lab report and testimony about the report by lab supervisor violated confrontation clause because lab supervisor did not testify regarding any independent judgment she may have formed based on her own testing and/or analysis of the drugs, and record indicated she merely recited and adopted analyst's findings); *Hall v. State*, Nos. 05–10–00084–CR, 05–10–00085–CR, 05–10–00086–CR, 05–10–00087–CR, 2012 WL 3174130, at *8 (Tex. App.—Dallas Aug. 7, 2012, pet. ref'd) (not designated for publication) (admission of lab report and testimony about report by lab supervisor who failed to testify about any independent judgments she may have formed and instead adopted findings of analyst who tested the drugs and prepared the report violated Confrontation Clause). We decline appellant's invitation to conclude that maintenance and repair records not prepared for testimonial purposes and relied upon by a qualified expert who was not personally involved in the specific maintenance and repair work deprives an accused of his rights under of the Confrontation Clause.

Accordingly, appellant's rights under the Confrontation Clause were satisfied, and the trial court did not abuse its discretion in permitting the complained-of testimony. We overrule appellant's issue.

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120428F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JUSTIN TRAVIS LIGHTFOOT, Appellant

No. 05-12-00428-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 2, Collin County, Texas
Trial Court Cause No. 002-84257-2011.
Opinion delivered by Justice Myers.
Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 23rd day of July, 2013.

/Lana Myers/
LANA MYERS
JUSTICE