

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00201-CR

LOUIS GERARDO NIEVES                                      APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Louis Gerardo Nieves, who was charged with intoxication manslaughter, pled guilty to a jury that assessed his punishment at twenty years' confinement. Although Appellant stood mute as to the deadly weapon allegation, the jury found that he did, indeed, use a deadly weapon in the commission of the offense. The trial court sentenced him in accordance with the jury verdict.

---

[1]See Tex. R. App. P. 47.4.

In two issues, Appellant contends that (1) the trial court abused its discretion by admitting evidence at punishment without proper authentication in violation of the Confrontation Clause and (2) the trial court erred by allowing, over objection, the prosecutor's improper jury argument injecting facts not proven at trial. Because we hold that the trial court did not reversibly err, we affirm the trial court's judgment.

## Summary of the Facts

On the night in question, Appellant, who worked at a local Mexican restaurant, had celebrated a friend's birthday at a downtown club in Fort Worth. In the early morning hours, he had left the club and was headed eastbound in the westbound lanes of the I-30 freeway. Alejandro Raya, driving a tanker truck carrying 7,780 gallons of gasoline, was headed westbound in the westbound lanes of the same freeway. Appellant's vehicle collided with Raya's truck, causing an explosion and fire that burned so intensely that it compromised the structural integrity of the bridge where the collision occurred. A witness stated that it appeared that "[t]he entire freeway was on fire." Flames rose 200 to 300 feet above the freeway. The investigator for the medical examiner's office reported that the fire was so hot and had burned so intensely that large portions of Raya's truck had melted into pools of metal. Raya was killed by the fire, and his body was so badly destroyed that his identity had to be determined by DNA testing.

Appellant's blood-alcohol concentration (BAC) was between .16 and .23 when tested after the collision. Extrapolation suggested that his BAC was between .19 and .24 at the time of the collision. A coworker who had been at the birthday party with Appellant corroborated his extreme intoxication and testified that he had prevented Appellant from taking another friend with him to an afterparty. Although Appellant admitted his guilt by pleading guilty at trial, an eyewitness to the collision testified that, immediately after the wreck, Appellant had claimed that his uncle had been driving.

The State offered evidence of Appellant's criminal history, which included three federal immigration offenses and a poor driving record from Washington State. The jury also viewed an in-car video lasting five and a half minutes that depicted the fire caused by the collision.

**Social Security Number**

In his first issue, Appellant argues that the trial court abused its discretion by admitting evidence without proper authentication, violating the Confrontation Clause. Specifically, he contends that the trial court abused its discretion by admitting evidence that he had used someone else's social security number on an employment application because the State failed to show that he, rather than the employer or another person, actually provided the number and because the admission of the extraneous act violated his Sixth Amendment right to confront his accuser.

3

A special agent with the Social Security Administration Office of the Inspector General testified that Appellant had used the social security number of another person when applying for employment at a Mi Cocina restaurant a few weeks before the collision. The special agent relied on an application for employment form provided by the restaurant. The State filed its notice of intent to offer the business record before trial. At trial, the document in question was offered as a business record and relied on by the special agent. The employment application before us contains no social security number because it has been redacted. The handwriting on the application is markedly different from the handwriting on the W-4 form. Nothing suggests that the employment application was prepared for purposes of trial or even after the commission of the offense, and Appellant likewise raises no such challenge.

In *Burch v. State*,[2] the Texas Court of Criminal Appeals held that the lab report identifying the substance seized as cocaine and providing the quantity seized was testimonial and that its admission absent the testimony of the analyst who prepared it violated Burch's rights under the Confrontation Clause.[3] In that opinion, however, the Texas Court of Criminal Appeals distinguished *Williams v. Illinois*, a case in which a majority of the United States Supreme Court upheld the admission of testimony by a prosecution witness that the defendant's DNA profile

---

[2]401 S.W.3d 634 (Tex. Crim. App. 2013).

[3]*Id.* at 637–38, 640.

4

came from semen within the complainant, even though that witness had gleaned that information solely from reading an independent lab report.[4] The Texas Court of Criminal Appeals explained:

> Justice Alito delivered the judgment of the court and an opinion that garnered four votes. In the view of the plurality, the petitioner's rights were not violated because the out-of-court statement (that the DNA profile came from semen within the victim) was not offered to prove the truth of the matter asserted. Instead, it was merely alluded to in order to explain the basis of the witness's independent conclusions (that the profile matched the petitioner's DNA). Alternatively, as a second and independent basis for the decision, Justice Alito stated that the report was not testimonial because it was created before there was a specific suspect. Consequently, it was not inherently inculpatory or created for use against the petitioner.[5]

Here, the application for employment was not offered for the truth of the matter asserted, nor was it prepared as an accusation against Appellant. We therefore hold that the application for employment was not testimonial and not hearsay; its admission was therefore not a violation of the right of confrontation.

Appellant also argues that the trial court abused its discretion when it admitted evidence that he had used the social security number of another because the State did not prove beyond a reasonable doubt that Appellant committed the extraneous offense. He bases his argument on the fact that no one who testified saw him fill out the form purporting to contain the social security

---

[4] *Williams v. Illinois*, 132 S. Ct. 2221, 2227–28 (2012).

[5] *Burch*, 401 S.W.3d at 638–39 (citations omitted).

5

number or interviewed anyone who saw Appellant fill out the form. Nor did the special agent for the Social Security Administration who testified regarding the unlawful use of another's social security number verify Appellant's signature.

Appellant's signature was on other documents available for comparison. Additionally, although it is clear from comparing the handwriting that someone other than Appellant filled out the form in question, Appellant is the person who worked under that social security number. While providing the number may be one manner of using the number, it is not the only manner. Appellant held his job under that number and received payment for his work under that number, and that number is reflected on his W-4 form. The evidence is sufficient to show that Appellant used that number.[6]

Additionally, although Appellant discusses the requirement that the trial court instruct the jury that they are not to consider extraneous acts of misconduct unless they find the evidence of the extraneous acts to have been proved beyond a reasonable doubt, Appellant does not point to any specific failure of the trial court to provide such instruction. He argues only that the State failed to provide sufficient evidence to prove the extraneous acts beyond a reasonable doubt. We hold the evidence sufficient to support a rational trier of fact's determination

---

[6]*See, e.g.*, *United States v. Buchanan*, No. 11-20918, 506 Fed. App'x 314, 315 (5th Cir. Jan. 8, 2013) (not designated for publication in federal reporter); *U.S. v. Oliver*, 630 F.3d 397, 415–16 (5th Cir.), *cert. denied*, 132 S. Ct. 758 (2011).

beyond a reasonable doubt that Appellant used another's social security number. The trial court therefore did not abuse its discretion by admitting the evidence. We overrule Appellant's first issue.

**Jury Argument**

In his second issue, Appellant complains about the State's improper argument at punishment. To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.[7]

If a jury argument exceeds the bounds of proper argument, a trial court's erroneous overruling of a defendant's objection is not reversible error unless it affected the appellant's substantial rights.[8] In determining whether the appellant's substantial rights were affected, we consider (1) the severity of the misconduct (that is, the prejudicial effect of the prosecutor's remarks); (2) curative measures; and (3) the certainty of the punishment assessed absent the misconduct.[9]

---

[7]*Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

[8]Tex. R. App. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[9]*Martinez*, 17 S.W.3d at 692–93; *Mosley*, 983 S.W.2d at 259.

Appellant argues that, in the State's closing argument, the prosecutor improperly stated to the jury, "And I know you're not going to consider probation because I know you know that based on the evidence you've heard, that he's illegally in this country, and he will be deported. He will never serve a day on that probation."

On appeal, Appellant does not point to any specific objections he made to that argument; he merely disputes the accuracy of the argument. At trial, the objection was that the prosecutor was asking the jury to disregard the court's instructions. The prosecutor's closing argument continued with no further objection until Appellant finally objected that the argument was outside the record. At that point, the prosecutor was instructed to rephrase his argument.

Appellant also argues in this issue that the prosecutor falsely claimed that Appellant had lied about being born in this country. Rather than pointing to a specific objection, Appellant merely disputes the truthfulness of this argument.

When the prosecutor argued, "You know, unfortunately, for [defense counsel at trial], the proof that [Appellant] lied is the fact that we have two documents that his name is on that he swore to," Appellant objected that the prosecutor was misstating the evidence and that there was no evidence that any document was ever sworn to. The trial court overruled his objection. While this was probably technically error, in that the employment application was not a verified document, the evidence was before the jury. They had the opportunity to take the documents into the jury room and to see for themselves that the

prosecutor had misstated the record. We therefore hold that this error did not affect Appellant's substantial rights, and we overrule his second issue.

We note with concern that the State's punishment evidence and argument dwelt to a large extent on Appellant's being from Mexico and in this country illegally. The prosecutor's argument included the following:

> And there's no doubt he lied on those documents. So it has to make you wonder. What is it that he thought about our state that made him start his lies when he got here? Because when he answered questions—when he got his license, he told the truth. What does that tell us about his attitude about the way things work in Texas?

The prosecutor discussed the impact of the complainant's death on his family, the facts of the offense, and Appellant's conduct in lying about who was driving and his irresponsible conduct that night. Then the prosecutor argued,

> And that is why he deserves the maximum punishment so that no one else from Washington, Vancouver, Idaho, wherever else they're traveling from, will have any doubts about what is the wrong place to come to a community, engage in this conduct, lie about your responsibility, lie about whether you were born in this country, destroy a family, destroy a bridge—

Our sister court in Houston has addressed referencing a defendant's nationality in jury argument. The prosecutor in that case argued, "I am going to ask you to find this man guilty of three counts of aggravated sexual assault of a child because he did this to these children. It wasn't right, and in this country we don't allow foreigners to rape little girls."[10] The appellate court held that the

---

[10]*Zakkizadeh v. State*, 920 S.W.2d 337, 340 (Tex. App.—Houston [1st Dist.] 1995, no pet.).

9

objection,—"improper argument"—was sufficient to preserve Appellant's complaint and held the argument was improper, albeit harmless.[11]

**Conclusion**

While we are greatly disturbed by the tenor of the State's punishment evidence and the jury argument, we are constrained to hold that the trial court did not reversibly err by allowing the arguments actually complained of or by admitting the evidence complained of. Having overruled Appellant's two issues, we must therefore affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

WALKER, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 12, 2014

---

[11]*Id.* at 340–41.