Opinion by Justice Moseley
In Bowie County, Texas, Michael Moore was convicted of felony murder and sentenced to life in prison and assessed a $10,000 fine. On appeal, Moore argues that (1) the trial court violated his Sixth Amendment rights by allowing a pathologist to testify as to the manner and means of the victim's death and (2) when the jury returned with a verdict form indicating both guilty and not guilty, the trial court erred by instructing the jury to continue its deliberations "without first inquiring of the jury if not guilty was their verdict."
We affirm the trial court's judgment because (1) the pathologist's testimony did not violate the Confrontation Clause and (2) error regarding the verdict procedure was not preserved.
*121 I. Factual and Procedural Background
On November 21, 2015, Moore called the emergency 9-1-1 number because his girlfriend's two-year-old child was not breathing. Shortly thereafter, Jeremy Courtney, a patrol sergeant with the Texarkana, Texas, Police Department, arrived at the home, where he saw Moore performing CPR on the child as directed through the telephone by a 9-1-1 operator. Paramedic, Donna Berry, arrived at the home a couple of minutes after Courtney, and Berry observed that the child did not have any open wounds or obvious broken bones, that the child's body "had no warmth in it whatsoever," that he was not breathing, and that he had no pulse. Berry saw vomit on the floor but there was no chewed food in the child's mouth and his airway was clear. Other first responders continued performing CPR on the child, who was taken to Wadley Hospital, where he was declared dead.
Moore said that about ten minutes prior to Courtney's arrival, the child had "consumed a large amount of pizza," and he had eaten until he vomited in the floor. When the child would not stop vomiting, Moore placed him in the bathtub, and Moore told the officer that the child might have a bruise or injury because he (Moore) had slipped and fallen four or five times while removing the child from the bathtub and carrying him into the living room. However, Courtney testified that he saw no skid marks on the floor or plates, pizza, or pizza boxes in the room and, further, that the vomit in the floor was not consistent with a child throwing up after having choked on food. Other responding officers gave similar testimony regarding their observations in the home. Because he believed the evidence was inconsistent with Moore's statements and further investigation was needed, Courtney requested another officer to come to the home and establish it as a crime scene. Courtney then contacted the child's mother, Alicia Carter, who was at work at the time, informed her of the situation, and personally took her to the hospital.
The police spoke with Moore several times, recording at least one of the interviews. In his statements to police, Moore indicated that the incident was a tragic accident. Just as Moore told Courtney on the day in question, he claimed that the child started vomiting and that Moore believed he had eaten too much too quickly and had stuffed his mouth too full. He put the child in the bathtub to clean him up, but he started vomiting again and had trouble breathing. Moore turned on the shower, believing that it could help the child breathe because he said that this helps Moore breathe when he experiences asthma-related breathing difficulty. He said that he tried to call Carter six times (this claim being corroborated by data on Carter's cell phone) but when she did not answer, he called 9-1-1. At that point, he was worried and frantic, and while carrying the child from the tub into another room, he fell into a wall once and fell again in the kitchen due to fluid on the floor from a leaking refrigerator. He said that he followed the 9-1-1 operator's directions regarding the way to perform CPR because he had never done it before.
After an autopsy was performed, Moore was arrested and indicted for felony murder. The indictment alleged that in the course and furtherance of committing the felony offense of injury to a child, Moore caused the child's death by "hitting [the child] with or against an unknown object" or "causing trauma to [the child] by a manner and means unknown." Moore entered a plea of not guilty.
During the trial, the jury heard the testimony of the responding police officers and paramedics as well as Carter and the *122 child's grandmother. Moore's recorded interview was played for the jury. Numerous photographs of the child, taken the day before the incident, the outside and inside of the home, and the vomit found in the residence were admitted into evidence. The jury also saw photographs taken during the autopsy that showed various injuries on the child's head, neck, and chest. As a part of its case-in-chief, the State called Dr. Tracy Dyer, a forensic pathologist, as an expert witness. Over Moore's objections, Dyer testified that the child had "numerous bruises on every surface of [his] head," and in her expert opinion, based on her review of the autopsy, histological slides, and photographs taken in the case, the child's death was caused by blunt force trauma.
The jury returned a verdict of guilty. After the punishment phase, Moore was sentenced to life in prison and assessed a $10,000 fine. Moore's motion for new trial was overruled by operation of law, and he now appeals from his conviction.
II. Did Dyer's Testimony Violate the Confrontation Clause?
In his first point of error, Moore contends that allowing Dyer to present expert testimony violated his rights under the Confrontation Clause because her testimony was based in part on an autopsy she did not perform and histological slides that she did not prepare.
The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. CONST. amend. VI. "[T]o implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature." Woodall v. State , 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) (citing Crawford v. Washington , 541 U.S. 36, 50-52, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ). A statement is "testimonial" when circumstances objectively indicate it was taken for the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." Davis v. Washington , 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). "A document created solely for an 'evidentiary purpose[ ]' ... made in aid of a police investigation ... ranks as testimonial." Bullcoming v. New Mexico , 564 U.S. 647, 664, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). Once the two Crawford conditions have been met and the Confrontation Clause has been implicated, testimonial hearsay is admissible only where "(1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant." Woodall , 336 S.W.3d at 642.
The most recent United States Supreme Court opinion on whether the Confrontation Clause allows an expert to disclose facts from an autopsy performed by another person or to draw conclusions from certifications made by nontestifying forensic analysts[1] resulted in a splintered 4-1-1 decision in which the United States Court of Appeals' judgment was affirmed, but no common "narrow ground" emerged as a legal holding. See Paredes v. State , 462 S.W.3d 510, 516 (Tex. Crim. App. 2015).[2]
*123 The Texas Court of Criminal Appeals reviewed the holding in Williams and, taking into account the reasoning in that case, it determined that the State may introduce testimonial statements of an expert through a surrogate only if that surrogate has at least some personal knowledge that the original declarant's statements are true. If the surrogate is unable or unwilling to do so, then the proffered evidence is constitutionally barred. See ids="6864543" index="12" url="https://cite.case.law/sw3d/462/510/#p516">id. at 517-18 ; Burch v. State , 401 S.W.3d 634, 635-36 (Tex. Crim. App. 2013) (reviewer who "basically double-checked everything" analyst did without actually conducting or observing tests could not testify as to test results).
On voir dire, Dyer testified that her independent expert opinion regarding the manner and means of the child's death was based on her review of the autopsy report, the photographs taken at the hospital and during the autopsy, as well as the histological slides. She did not perform or supervise the autopsy and had no role in preparing the slides. Dyer admitted that the autopsy was performed to aid in the determination of criminal liability. Moore objected to her testimony, arguing that it violated his rights under the Confrontation Clause because he was being denied the opportunity to cross-examine the person or persons who performed the autopsy and prepared the slides to determine if they were prepared properly or corrupted in some fashion. The trial court overruled that objection and, following its ruling, Dyer testified regarding the timing, severity, type, and symptoms of the numerous injuries shown in the hospital photographs, the autopsy photographs, and the histological slides. In Dyer's expert opinion, the cause of the child's death was blunt force trauma.
Here, neither the autopsy report nor the histological slides were offered or admitted into evidence, and the photographs are nontestimonial in nature for the purposes of the Confrontation Clause. See TEX. R. EVID. 801(a) ; Herrera v. State , 367 S.W.3d 762, 773 (Tex. App.-Houston [14th Dist.] 2012, no pet.) (autopsy photograph is a nontestimonial statement); Wood v. State , 299 S.W.3d 200, 214-15 (Tex. App.-Austin 2009, pet. ref'd). Because the autopsy report was not admitted into evidence, the cases upon which Moore relies, which primarily concern the admission of an unavailable witness's testimonial out-of-court statement, are not directly on point. Rather than being a surrogate witness proffering an explanation of another person's testimonial evidence, the record reflects that Dyer reached an independent conclusion based on her review of the autopsy report, photographs, and slides. See Paredes , 462 S.W.3d at 517-18. Dyer's expert testimony did not violate the Confrontation Clause merely because it was based, to some degree, on inadmissible evidence. See TEX. R. EVID. 703 (providing that an expert may base an opinion on facts or data that is not admissible in evidence, provided that they are of a type on which experts in the field can reasonably rely); see also Martinez v. State , 22 S.W.3d 504, 508 (Tex. Crim. App. 2000). Furthermore, Dyer admitted to the jury that she neither performed the autopsy nor participated in it. Moore cross-examined Dyer regarding her conclusions, the documents she reviewed, and her interpretation of the photographs and slides. Moore elicited testimony from Dyer that the child's initial symptoms could have been caused by a prior brain injury, that two of the child's head injuries could have been caused by a fall, that several of the separate injuries seen in the photographs could have been *124 caused by a single impact, and that other injuries could have happened when Moore and the paramedics performed CPR or when the child was intubated.
We are persuaded that Dyer's testimony did not violate the Confrontation Clause, and we overrule this point of error.
III. Did the Trial Court Err in Instructing the Jury to Continue Deliberating?
The jury returned with a verdict form wherein the presiding juror had signed both the lines indicating "guilty" and "not guilty." Moore argues that the trial court erred in failing to follow Article 37.04 of the Texas Code of Criminal Procedure, maintaining that instructing the jury to continue its deliberations "without first inquiring of the jury if not guilty was their verdict ... amounted to an instructed verdict of guilty." Article 37.04 provides,
When the jury agrees upon a verdict, it shall be brought into court by the proper officer; and if it states that it has agreed, the verdict shall be read aloud by the judge, the foreman, or the clerk. If in proper form and no juror dissents therefrom, and neither party requests a poll of the jury, the verdict shall be entered upon the minutes of the court.
TEX. CODE CRIM. PROC. ANN. art. 37.04 (West 2006).
Reiterating the occurrence, the record and the briefs show that after the jury had deliberated for about forty minutes, the following occurred after the jury returned to the courtroom following its deliberations:
THE COURT: Please be seated. Mr. Foreman, has the jury reached a verdict?
PRESIDING JUROR GRAVES: We have, Your Honor.
THE COURT: Is it unanimous?
PRESIDING JUROR GRAVES: Yes, sir.
THE COURT: All right. Would you pass the verdict form over to the bailiff? All right. Ladies and gentlemen of the jury, there's an issue with the verdict form. What I'm going to do is I'm going to send you back and let you reread the verdict form, as in there should only be a signature on one line per page, if any, okay? Because it reads-I'll read the entire both pages. "We, the jury, find the Defendant, Michael Moore, guilty of felony murder as charged in the indictment," and if that's what you find, you sign there as the presiding juror. "We, the jury, find the Defendant not guilty of felony murder as charged in the indictment," if that's your verdict you sign there. On the next page, "We, the jury, find the Defendant, Michael Moore, guilty of the lesser offense of criminally negligent homicide." If that's your verdict, you sign there. "We, the jury, find the Defendant not guilty of the lesser offense of criminally negligent homicide," sign there, all right? Now, with those further instructions, what I'm going to do, if it's good with counsel, I'm going to remove the two verdict forms on the back, or would you prefer them to draw a line through them?
[COUNSEL FOR MOORE]: I don't know what-.
THE COURT: All right. I'm going to let y'all come up here.
(Bench conference:)
THE COURT: I'm going to show you just the one page, all right? And I'm going to show you this page. There are signatures at both sides.
[THE STATE]: I think a cleaner way to do it would be to make those a court exhibit if you wanted to attach new forms, so that we keep those intact.
*125 [MOORE]: Yeah, that definitely needs to be a part of the record.
[THE STATE]: Yes.
THE COURT: Okay.
[THE STATE]: And then attach two new verdict forms.
THE COURT: All right. So see what I'm doing?
[MOORE]: Yes, sir.
[THE STATE]: We're fine with that.
THE COURT: All right.
....
THE COURT: ... this is going to be a court record exhibit. I'm going to attach in the same order forms one and two again, and I'm going to staple it. I'm going to hand this to [the Bailiff] and I'm going to let y'all go back to the jury room and review those last two pages again. Read the sentences, and sign on the line which is your determination.
(Jury retires at 3:25 p.m.)
The jury returned with a unanimous verdict of guilty. The jury was then polled at Moore's request, with all jurors indicating that they agreed to the verdict. The case then proceeded to the punishment phase.
Moore argues that the trial court should have inquired of the jury if "not guilty" was their verdict before having them continue their deliberations. However, Moore failed to bring his request to the trial court's attention. To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2). Because Moore failed to raise this issue at trial through a request, objection, or motion for new trial, nothing was preserved for our review.[3] See TEX. R. APP. P. 33.1(a)(1) ; Trinidad v. State , 312 S.W.3d 23, 29 (Tex. Crim. App. 2010) (appellant "procedurally defaulted their statutory arguments on appeal" where they failed to object to trial court's failure to follow mandatory procedural requirement); Reese v. State , 773 S.W.2d 314, 317 (Tex. Crim. App. 1989) ("A poll of the jury must be requested or it is waived.").
We affirm the trial court's judgment.

Williams v. Illinois , 567 U.S. 50, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012).

Five justices agreed that the practice was permissible while one concurring justice and four dissenters all agreed that the expert's opinions were offered for "the truth of the matter asserted" and would thus ordinarily be prohibited by the Confrontation Clause. See Williams , 567 U.S. 50, 132 S.Ct. 2221. However, Justice Thomas refused to hold that the hearsay statements were "testimonial" because he did not believe they were made under sufficiently solemn or formal circumstances. Id.

Moore's reliance on White v. State for this point of error is misplaced because the defendant in White objected to the trial court directing the jury to continue deliberations, whereas here, Moore failed to raise any objection to the trial court's actions. See White v. State , 492 S.W.2d 281, 282-83 (Tex. Crim. App. 1973).