

# NUMBER 13-14-00300-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

JOSE ANGEL PEREZ,                                                         Appellant,

v.

THE STATE OF TEXAS,                                                       Appellee.

---

### On appeal from the 24th District Court
### of Jackson County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justice Benavides and Perkes
Memorandum Opinion by Justice Benavides**

By one issue, appellant Jose Angel Perez appeals the trial court's judgment revoking his community supervision for driving while intoxicated—third offense, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b) (West, Westlaw through ch. 2, 2015 R.S.). Perez asserts that the trial court reversibly erred by admitting testimony

related to the results of his urinalysis specimen in violation of his rights under the Sixth Amendment's Confrontation Clause. We affirm.

## I.    BACKGROUND

On January 8, 2004, Perez pleaded guilty to driving while intoxicated—third offense, a third degree felony. The trial court found Perez guilty and assessed his punishment at ten years' imprisonment with the Texas Department of Criminal Justice—Institutional Division (TDCJ-ID) and fined him $3,000. The trial court suspended Perez's sentence, however, and placed Perez on community supervision for a period of ten years and imposed various terms and conditions of the community supervision.

On December 12, 2013, the State filed a motion to revoke Perez's community supervision and alleged that Perez violated various conditions of his community supervision order, including that: (1) on November 21, 2013, Perez intentionally or knowingly possessed cocaine; (2) on November 21, 2013, Perez tested positive for cocaine, after a sample was collected and analyzed; (3) Perez failed to report to the Dallas County Community Supervision and Corrections Department[1] for the month of October 2013; (4) Perez failed to pay community supervision fees and owes a past-due balance of $1,755; (5) Perez failed to make payments on his $3,000 fine balance and owes $1,961 in past-due payments; and (6) Perez failed to perform a minimum number of community service hours. Perez pleaded "not true" to the State's first, second, third, and sixth allegation and "true" to the State's fourth and fifth allegation.

---

[1] Although this case originates from Jackson County, the record shows that prior to the present revocation proceedings, Perez resided in Dallas County, where Dallas County provided what is known as "courtesy supervision" of Perez for Jackson County.

After receiving evidence at the contested revocation hearing, including testimony from several witnesses and various exhibits, the trial court found that all six of the allegations in the State's motion to revoke were true and revoked Perez's community supervision. The trial court assessed Perez's punishment at ten years' imprisonment in the TDCJ-ID. This appeal followed.

## II.    CONFRONTATION CLAUSE

By his sole issue, Perez asserts that his confrontation rights were violated when the trial court admitted the testimony of Ken Kodama, who testified about the positive findings of Perez's urinalysis.[2]

## A.    Relevant Facts

On November 21, 2013, Perez submitted to a urinalysis drug-screen exam, which was collected and sent to Phamatech Laboratories ("Phamatech"), a San Diego, California-based company that conducts urinalysis drug screenings for various entities throughout the country. The results of Perez's urinalysis test results indicated a positive result for cocaine. The State introduced, and the trial court admitted, the complete lab report, including the test results and chain of custody of the urine sample, through the

---

[2] This Court has previously held that "the [C]onfrontation [C]lause is only applicable in criminal trials" and that because a community supervision revocation proceeding is an administrative hearing and not a criminal trial, the right to confront one's accuser does not apply. *See Norman v. State*, 2011 WL 2732673, at *3 (Tex. App.—Corpus Christi 2011, no pet.) (mem. op., not designated for publication). However, since our *Norman* decision, the Texas Court of Criminal Appeals has held that "aside from the burden of proof required to prove a community-supervision violation (preponderance of the evidence, which is lower than the burden of proof beyond a reasonable doubt that is required to prove a new criminal offense), there are few procedural differences between a Texas criminal trial and a Texas community-supervision revocation proceeding." *Ex parte Doan*, 369 S.W.3d 205, 210 (Tex. Crim. App. 2012). Further, the court of criminal appeals noted that the Rules of Evidence, as well as the exclusionary rule to bar illegally seized evidence "apply fully in a Texas probation revocation hearing."

Therefore, if the Rules of Evidence and exclusionary rule apply to community supervision proceedings, so should the United States Constitution. With this in mind, we will fully analyze the merits of Perez's Confrontation Clause argument as applied to his revocation proceeding. *See id.*

3

State's sponsoring witness, Ken Kodama. Kodama is the director of Phamatech's laboratory.

Kodama testified that Perez's urine sample was handled in "an assembly line process" with "many hands touching the urine sample" during the testing process. The first test that Phamatech conducted on Perez's urine, known as the immunoassay test, checked for "the different classes of drugs" without identifying the exact drug that was present in the system, if any. If a urine sample tests positive for a class of drugs, then the next test identifies the specific drug in the positive-tested drug class through a process known as gas chromatography mass spectrometry, or "GCMS." According to Kodama, Perez's urine tested positive for cocaine after these two tests were conducted.

Kodama admitted that he did not receive the urine at Phamatech. Furthermore, Kodama neither conducted the immunoassay or GCMS testing on Perez's urine, nor specifically supervised the two tests. Instead, Kodama testified that an individual by the name of "L. Mercado" received the sample at the Phamatech Laboratory in San Diego, while an individual named "C. Pangco," conducted the first test and an individual by the name of "L. Ngo" conducted the GCMS test. The trial court overruled Perez's objections to the admissibility of the urine sample results.

B. **Applicable Law**

The Confrontation Clause of the Sixth Amendment guarantees the accused the right to confront the witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). This right has been applied in the context of testimonial statements, and the United States Supreme Court has held that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has

4

had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). The *Crawford* decision described the class of testimonial statements that are covered by the Confrontation Clause. *See id.* at 51–52.

Five years later, the United States Supreme Court used the *Crawford* framework and held that "certificates of analysis" showing the results of a forensic analysis performed on seized substances were testimonial statements because they were "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination" to prove the factual question of whether the substance found was, as the prosecution claimed, contraband. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310–11 (2009) (internal quotations omitted).

Three years after the *Melendez-Diaz* decision, the United States Supreme Court addressed the issue of whether the Confrontation Clause permitted the prosecution to introduce a forensic laboratory report containing testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification. *See Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2713 (2011). In answering the question, the United States Supreme Court held that such a statement may not be introduced against the accused at trial, unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness. *Id.* Stated another way, the *Bullcoming* court held that the "surrogate testimony" of a scientist who did not sign the certification or perform or observe the test reported in the certification of the forensic laboratory report violates the Constitution because "the accused's right is to be confronted with the analyst who made the certification, unless that analyst is

5

unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." *Id.* at 2710. The Texas Court of Criminal Appeals analyzed the holding in *Bullcoming* and noted that "even if the results in question involved no interpretation or discretion, the testifying reviewer could not verify that the results were properly generated." *Burch v. State*, 401 S.W.3d 634, 637 (applying the *Bullcoming* holding to facts in which a testifying reviewing analyst did not have personal knowledge of the testimonial facts being submitted in a forensic lab report); *but see Paredes v. State*, __ S.W.3d __, 2015 WL 3486472, at *1–8 (Tex. Crim. App. June 3, 2015) (distinguishing *Bullcoming* and holding that a DNA analyst's opinion regarding a DNA match did not violate the Confrontation Clause because the opinion was based upon computer-generated data obtained through batch DNA testing).[3]

## C. Discussion

The analysis in this case is controlled by *Bullcoming*. The State introduced testimonial laboratory test results that helped prove the State's allegation that Perez possessed cocaine in his system in violation of his community supervision terms and conditions. The record shows that two tests were performed on Perez's urine to establish a positive finding of cocaine: (1) an immunoassay test to establish the class of drugs, if any, found in Perez's urine; and (2) the GCMS test that confirmed the exact drug (cocaine) found in Perez's urine. The record further shows that these two tests were conducted by two separate analysts, who did not testify. Instead, the State introduced this report

---

[3] The *Paredes* court held that because the testifying witness "did not introduce or testify regarding a formal report or assertion from a non-testifying analyst," and instead "used non-testimonial information—computer-generated DNA data—to form an independent, testimonial opinion" and Paredes was given the opportunity to cross-examine her about her analysis, no Confrontation Clause violation existed. *Paredes v. State*, __ S.W.3d __, 2015 WL 3486472, at *8 (Tex. Crim. App. June 3, 2015).

through Kodama, the director of the laboratory. Kodama did not, however, sign off on the lab report, perform the testing, or personally observe the testing performed on Perez's urine.[4] *See Bullcoming*, 131 S.Ct. at 2713. As a result, Kodama's "surrogate testimony" falls squarely in the type of testimony that the United States Supreme Court and Texas Court of Criminal Appeals have expressly disapproved under the Sixth Amendment.

We hold that the trial court erred by allowing Kodama to testify about the testimonial facts being submitted. *See Burch*, 401 S.W.3d at 640. Having found error, we will now analyze it for harm. *See* TEX. R. APP. P. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.").

## D.    Harm Analysis

Appellate review of an order revoking probation is limited to abuse of the trial court's discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). In determining questions regarding sufficiency of the evidence in probation revocation cases, the burden of proof is by a preponderance of the evidence. *Id.* Thus, the order revoking probation must be supported by a preponderance of the evidence—that is, the greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his community supervision. *Id.* at 763–64. Texas

---

[4] The fact that the actual testing process is performed by machines, and not people, as Kodama asserted in his testimony, is of no consequence because the Supreme Court explicitly rejected that a Confrontation Clause violation cannot occur if an analyst was "only interpreting machine-generated data" because the "testimonial statements were therefore those of the machine." *Burch v. State*, 401 S.W.3d 634, 637 (Tex. Crim. App. 2013).

7

law is clear that "one sufficient ground for revocation would support the trial court's order revoking community supervision." *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009).

The trial court found sufficient grounds to revoke Perez's probation on all six of the State's allegations presented in its motion to revoke. In this case, however, we held that the trial court erred by allowing Kodama to testify regarding the results of Perez's urinalysis. Therefore, we will not consider the first two grounds for revocation and analyze the remaining grounds to determine whether sufficient evidence supports the trial court's revocation order.

We turn first to the allegation that Perez failed to perform a minimum number of community service hours. Brannon Baxley, a supervisor with the probation office in Jackson County, testified that the Dallas County probation office indicated that Perez had completed only 70 hours of community service since his probation started, despite being required to complete a total of 240 community service hours with a minimum of seventeen hours per month. Furthermore, Baxley advised Perez that if community service hours were not completed by December, he would face a motion to revoke. Baxley testified that his records showed that Perez advised him that he had completed all of the necessary hours, but did not have the supporting paperwork. Stephanie Loftin of the Dallas County Probation Office also testified. Loftin noted that on November 21, 2013, Perez "admitted to falsely reporting he is working toward [community service] hours each month and now would rather wait for his court date to determine the outcome of his termination [sic]." Perez testified in his defense, and claimed to have completed his requisite 240 community service hours at the Goodwill in Dallas, but he did not have proof

8

that it was completed. Based on this record, we conclude that the greater weight of the credible evidence creates a reasonable belief that Perez did not complete his requisite community service hours. Accordingly, the trial court did not abuse its discretion in finding this allegation true. *See Rickels*, 202 S.W.3d at 763–64.

Therefore, because one sufficient ground for revocation exists to support the trial court's revocation order, we cannot determine beyond a reasonable doubt that the erroneous admission of Kodama's testimony contributed to the trial court's judgment revoking Perez's community supervision to find such error harmful. *See Smith*, 286 S.W.3d at 342; *see also* TEX. R. APP. P. 44.2(a). Perez's sole issue is overruled.

## III. CONCLUSION

We affirm the trial court's judgment.

GINA BENAVIDES,
Justice

Concurring Memorandum Opinion
By Justice Gregory T. Perkes.

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
9th day of July, 2015.