# NO. 12-15-00078-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BRANDON PAUL COUCH,* *APPELLANT* | § | *APPEAL FROM THE 354TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *RAINS COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A jury found Appellant, Brandon Paul Couch, guilty of murder, and the trial court assessed his punishment at imprisonment for forty years. In one issue, Appellant contends the trial court erred in admitting a firearm and toolmark analysis report prepared by James Jeffress and the accompanying testimony of Kevin Callahan through whom the State offered the report. We affirm.

### BACKGROUND

On November 14, 2012, Gary Couch found his mother, Mattie Couch, dead in her home from one or more shotgun wounds. There were no signs of a struggle or forced entry into the home. The victim apparently was holding a pizza and a drink when she was killed. An x-ray showed a mass of bird shot pellets all over the left side of Mattie's chest. Part of the wadding from a shotgun shell was found inside her chest cavity. The wadding in her chest cavity and the absence of soot or stippling on the wounds indicated the murder weapon was fired three to five feet from the victim.

Appellant is Mattie Couch's grandson. He lived in a van behind her house. Appellant seldom held a job and usually got money from his grandmother, who felt she had to take him in because he had nowhere else to go. Their relationship was known to be strained.

1

Rains County chief deputy sheriff, Kurt Fisher, remained at the crime scene with the justice of the peace while the sheriff and other officers searched for Appellant. As he stood watch outside the house, Fisher saw Appellant walk out of the woods toward the house carrying a long gun. When Fisher yelled to him to drop the gun, Appellant turned and ran. A protracted search for Appellant ensued.

Using an infrared sensor, a Texas Department of Public Safety (DPS) helicopter located Appellant's hiding place. Appellant was arrested and took the officers to a nearby creek where they recovered the twenty gauge shotgun he had been carrying. Appellant also had two twenty gauge shotgun shells (numbers 7½ and 8) when arrested.

During the time Appellant evaded arrest, he encountered Deborah Simmons, a friend's mother, on a neighbor's porch. Simmons had noticed the helicopter activity. She asked Appellant if he had killed his grandmother. Appellant answered "no," but he refused to relinquish the gun he was carrying. Appellant also called on a school friend, Christopher Siscoe, who encouraged Appellant "to turn himself in." Siscoe testified that Appellant told him that he had used P2P, a methamphetamine, that night. Appellant also told Siscoe that "he felt like his grandmother was sorry before he pulled the trigger." By this, Appellant apparently meant that he thought his grandmother felt remorse for being "rough on him" over the years.

Over Appellant's objections, the trial court admitted a "Firearms/Toolmarks Laboratory Report" prepared by James Jeffress, a DPS forensic scientist. The report sets out Jeffress's opinions from his analysis of the shotgun, shot pellets, shotgun shells, shotgun wadding, and clothing submitted for testing. Jeffress found that the shot pellets from the victim's wound were of the same type as the number 7½ lead shot in the unfired shell found with Appellant at his arrest. He found that the wadding taken from the victim's chest cavity was consistent with the wadding used in the manufacture of Winchester twenty gauge shotgun shells, the brand and gauge of the shells found on Appellant. Jeffress reported that the submitted shotgun was operational, although "malfunctions were detected during testing."

The State introduced the "Firearms/Toolmarks Laboratory Report" as a business record through the testimony of Keven Callahan, a firearms examiner with the DPS crime laboratory. Appellant objected to the report's admission contending that its admission through Callahan, rather than through the analyst who actually did the testing, violated his right to confront the witnesses against him. The trial court overruled Appellant's objections and admitted the report.

Appellant called no witnesses and presented no other evidence.

## RIGHT OF CONFRONTATION

In his sole issue, Appellant contends the trial court reversibly erred in admitting the firearms and toolmark report prepared by James Jeffress but offered through the testimony of Kevin Callahan, the custodian of the records, and in allowing Kevin Callahan to read from the report. Appellant maintains that the report contained inadmissible hearsay, and that the admission of the report prevented him from cross examining James Jeffress, who did the testing and prepared the report. Therefore, Appellant maintains that he was denied his constitutional right of confrontation. The State contends that Callahan's predicate testimony established that he performed a second round of testing on the wadding and pellets removed from Mattie Couch's body, and therefore he was not a mere surrogate for Jeffress as contended by Appellant. The State argues that the conclusions stated in the report regarding the wadding and pellets were limited to Callahan's own conclusions. Callahan and his notes were available for cross examination. Therefore, the State insists, there was no denial of Appellant's right of confrontation.

### Standard of Review

The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374, 158 L. Ed. 2d 177 (2004). Although evidentiary rulings are usually reviewed for an abuse of discretion, the question of a statement's testimonial nature is one of law that is reviewed de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

### Applicable Law

The Confrontation Clause of the Sixth Amendment guarantees the accused the right to confront the witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 1068, 13 L. Ed. 2d 923 (1965). "Testimonial" statements are inadmissible at trial unless the witness who made them either takes the stand to be cross examined or is unavailable and the defendant has had a prior opportunity to cross examine the witness. *Crawford*, 541 U.S. at 54, 124 S. Ct. at 1366. "Testimonial" statements include those "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for

3

use at a later trial." *Id*. at 52, 124 S. Ct. 1364. Forensic reports prepared in connection with a criminal investigation or prosecution are testimonial and cannot be admitted without satisfying the requirements of the Confrontation Clause. *Burch v. State*, 401 S.W.3d 634, 636-37 (Tex. Crim. App. 2013).

In *Burch*, the State offered into evidence a one page laboratory report certifying the substance tested was cocaine and weighed 2.2 grams, including adulterants or dilutants. Both the testing analyst, Pinckard, and the reviewing analyst, Lopez, signed the report. *Id*. at 635. Pinckard no longer worked for the testing company. The State called Lopez who explained that Pinckard had performed all the tests. However, Lopez had double checked everything to insure that the laboratory procedures were followed, although she did not participate in the tests or see them performed. *Id*. at 635-36. In holding the report's admission violated the Confrontation Clause, the court stated, "Without having the testimony of the analyst who actually performed the tests, or at least one who observed their execution, the defendant has no way to explore the types of corruption and missteps the Confrontation Clause was designed to protect against." *Id*. at 637-38.

The analyst who tested the defendant's blood was on unpaid leave in *Bullcoming v. New-Mexico* so the State called another analyst familiar with the laboratory testing procedures. 564 U.S. 647, 651, 131 S. Ct. 2705, 2709, 180 L. Ed. 2d 610 (2011). The Supreme Court held that the report was the testimonial statement of the analyst who actually performed the tests; it could not be received in evidence through the testimony of a "surrogate" witness. *Id*., 564 U.S. at 652, 131 S. Ct. at 2710.

In *Paredes v. State*, 462 S.W.3d 510 (Tex. Crim. App. 2015), the court of criminal appeals considered a Confrontation Clause challenge to the admission of DNA analysis of bloodstains on the defendant's shirt. The State called the forensic laboratory director to testify about the DNA analysis in the defendant's case. The raw data the director relied upon in reaching her conclusion was generated by three other analysts who were not called. However, the director supervised the proceedings and conducted the final analysis comparing the produced DNA profiles to the evidence and performed the crucial analysis determining the DNA match. *Id*. at 511-12. Therefore, the conclusion she testified to at trial was her own. *Id*. at 515. The raw DNA data merely provided the basis for the opinion she had developed. *Id*. at 514. Her testimony was not used as a substitute for out-of-court testimony. *See id*. "Without [the

4

director's] independent analysis, the DNA profiles – the raw, computer-generated data . . . stand for nothing . . . ." *Id*. at 519.

"For an expert's testimony based upon forensic analysis performed solely by a nontestifying expert to be admissible, the testifying expert must testify about his or her own opinions and conclusions." *Id*. at 517. The testifying expert can rely upon information from a nontestifying analyst, but the testifying expert cannot act as a surrogate to introduce that information. *Id*. at 518.

**Discussion**

The firearm, shot pellets, shotshells, and shot wad seized as evidence were sent to the DPS crime lab for forensic testing. The report (State's Exhibit 34) sets out the results of the testing conducted by James Jeffress as well as his conclusions based on the test results. Jeffress concluded that (1) the shotgun was operational but subject to malfunction; (2) the pellets and the wadding recovered from the body were consistent with number 7½ lead shot and with a Winchester manufactured wad; (3) and the muzzle to garment distance (relating to Appellant's clothing) could not be determined.

Jeffress did not testify at the trial or at any other proceeding in the case. Instead, the State introduced the firearms and toolmark report as a business record through the testimony of Kevin Callahan, a firearms examiner and records custodian with the same laboratory.

Callahan identified himself, not as one who observed or conducted the testing, but as a "verifier" of the results. When asked to explain his role as verifier and the verification process, Callahan testified as follows:

> So the original analyst does all the documentation. Does the report writing. At that point they remain the custodian of the evidence. I review the documentation and then they bring me the evidence and I will review the actual conclusions . . . . We have several conclusions that are required to be verified. We can also do verifications based off of the parameters of the case. So in this instance[,] what was verified was that the size of the shots is consistent with seven and a half shot and that's based on the weight of the pellets and their diameter.

Callahan testified outside the presence of the jury that the shotgun pellets retrieved from Mattie Couch's body were consistent with number 7½ shot based on the weight and size of the shot determined by Jeffress's tests. Callahan gave no basis for his verification of Jeffress's conclusions regarding the other items submitted for testing. He made no conclusions but simply read those contained in Jeffress's report. It appears that the verifier's function was to review the

recorded results of the tests in order to confirm that the analyst's conclusions conform to the test results. It was not the verifier's function to make independent conclusions. The trial court admitted the report into evidence. After the report's admission, the State had Callahan read Jeffress's report without further explanation.

It is undisputed that the content of Jeffress's report is testimonial. And Callahan testified that he neither helped conduct nor observed the tests performed by Jeffress. Therefore, we conclude that Callahan was simply a surrogate for Jeffress. The admission of the firearms and toolmark report through Callahan violated Appellant's right of confrontation.

**Harm – Applicable Law**

Error in admitting evidence in violation of a defendant's right to confront the witnesses against him is constitutional error, which requires reversal unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). "The question is not whether the verdict is supported by the evidence." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). Rather, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at their decision. *Id*.

In determining whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt, the following factors are relevant: (1) how important the out of court statement was to the State's case; (2) whether the out of court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out of court statement on material points; and (4) the overall strength of the prosecution's case. *Scott*, 227 S.W.3d at 690 (quoted in *Langham*, 305 S.W.3d at 582).

**Harm–Discussion**

Appellant argues that the prosecutor obviously believed the report was important in the proof of the State's case, because he emphasized its role in both his opening statement and final argument. In his opening statement, the prosecutor told the jury that

> [s]he was shot with a 20 gauge shotgun . . . . I believe the evidence will show that there were pellets and wadding removed from her body. And the pellets and wadding are consistent with those from a 20 gauge Winchester shell . . . . The evidence will show the defendant gets caught with a 20 gauge shotgun. In the chamber of the 20 gauge shotgun is a Winchester 20 gauge, unspent shell. The pellets and wadding in the Winchester unspent shell or that shell itself are

6

consistent with those that were found in Mattie Couch. Winchester 20 gauge, seven and a half shot.

In his final argument, the prosecutor made the following argument:

> It's easy. He's caught with a .20 gauge shotgun, with a .20 gauge shell in it. He's got .20 gauge shells on him. She's shot, not with a slug or something . . . . That's the gun he was caught with. That's the gun that killed her . . . . He's caught and yes, there's a million, billion, how many ever shells a Winchester – but isn't it awful coincidental, it's more than a coincidence, she's shot and you do have the lab report here which ties it all together. She's shot seven and half shot pellets that come out of her. Seven and a half shot pellets in a gun. It's a Winchester brand wadding. Winchester shell in the gun . . . . Take the lab reports back there that shows it's the same type of gun.

Tests of Appellant's clothing and weapon failed to disclose the presence of blood. Appellant argues that the case against him is entirely circumstantial. In the absence of physical evidence connecting him to the crime, Appellant contends that it is unreasonable to believe the report was not "a contributing factor in the jury's deliberations in arriving at their decision."

The challenged firearms and toolmark report contained three conclusions: (1) the shotgun was operational but malfunctioning; (2) the pellets and wadding recovered from the body were consistent with number 7½ shot and with a Winchester manufactured wad; and (3) the muzzle to garment distance could not be determined.

The conclusions regarding the shotgun (conclusion 1) and muzzle to garment distance (conclusion 3) contributed nothing to the proof of Appellant's guilt. The second conclusion contributes an added degree of scientific certainty to the connection between the pellets and the wadding found in the victim's chest cavity and the shells in Appellant's shotgun and in his pocket when he was captured.

Mattie Couch's killer murdered her with a shotgun loaded with birdshot. Appellant was located after an extensive search. When captured, he had a shotgun loaded with birdshot and two similar shells in his pocket. The jury did not need forensic affirmation that the pellets and wadding were "consistent with" the ammunition possessed by Appellant in order to make the connection.

The State's case against Appellant was strong. Appellant lived on the premises with his grandmother and had access to her residence. He fled from police and he was apprehended only after an extended search using dogs, helicopters, and a SWAT team. During his flight, he told

his friend that "he believed she was sorry before he pulled the trigger." She had taken him in, "because nobody would." But he used drugs and seldom worked. He depended on her for more than a place to stay. A discordant relationship resulted. Appellant had been charged with a prior assault on his grandmother. Even unaided by the challenged report, it would have been difficult for the jury to ignore that Appellant, when captured, had the type of weapon and ammunition used to kill his grandmother.

We conclude that beyond a reasonable doubt, the error in admitting the firearms and toolmark report did not contribute to Appellant's conviction or punishment. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

### BILL BASS
Justice

Opinion delivered July 29, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of appeals, sitting by assignment.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 29, 2016**

**NO. 12-15-00078-CR**

**BRANDON PAUL COUCH,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 354th District Court
of Rains County, Texas (Tr.Ct.No. 5354)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*