

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00166-CR

_____

ELIAS ANDREW PUEBLA, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 271st District Court
Jack County, Texas
Trial Court No. 5100

---

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. INTRODUCTION

A jury found Elias Andrew Puebla guilty of the offense of unlawful possession of a firearm by a felon and assessed his punishment at sixteen years' confinement. *See* Tex. Penal Code Ann. § 46.04(a). Puebla now appeals the conviction, raising issues as to the authentication of one exhibit, the admissibility of his statements recorded in another exhibit, and his right to confront witnesses whose statements were recorded in both exhibits. Because we overrule each issue, we will affirm the judgment of the trial court.

## II. BACKGROUND

In October 2021, Texas Game Warden Charles Tweedle Jr. responded to a midnight telephone call from a property owner in north Jack County reporting gunshots and possible illegal hunting. Tweedle drove to the area and parked his vehicle in a high vantage from which he knew he could see and hear for some distance.

After waiting there for about two hours, Tweedle heard a gunshot nearby. He drove toward the sound and, within minutes, came upon a pickup truck with its lights off that was stopped on the side of an unpaved county road. He saw two men in the cab and another man with a rifle in the bed of the truck. Tweedle activated his emergency lights, identified himself, told the men to stay in the truck, started recording with his body-worn camera, and exited his vehicle. The driver of the truck also exited and walked toward Tweedle.

Tweedle identified himself, as did the driver, Barry Bronaugh. Tweedle also spoke to the man in the back of the truck, who identified himself as Michael Rojas. Tweedle inspected the bed of the truck and secured the rifle by moving it to the hood of his vehicle, away from the truck. In securing the rifle, he determined that it had a round jammed in the breech.

Tweedle then spoke with Puebla, who was sitting in the front passenger seat of the truck. Tweedle asked Puebla if he had a rifle. Puebla answered in the affirmative and handed it to him. Tweedle asked Puebla if he had fired the rifle that evening, and Puebla answered in the affirmative but denied firing from the roadway. Also in the back seat of the cab of the truck was Rojas's son, asleep.

Tweedle determined that Bronaugh had been drinking. A horizontal gaze nystagmus test indicated that Bronaugh was, according to Tweedle, "right there" or "just over" as to the level of his intoxication. Tweedle determined that he would issue the men citations for hunting on a public roadway and release them, having Rojas drive due to Bronaugh's likely intoxication.

Before releasing them, Tweedle contacted county dispatch with the identities of the three men. Dispatch informed him that Rojas was a convicted felon and indicated that Puebla might be, although the information was unclear. Tweedle arrested Rojas for illegal possession of a firearm by a felon.

A Jack County Sheriff's deputy arrived to assist Tweedle. In preparing to have Puebla drive instead of Rojas, Tweedle asked Puebla if he had ever been convicted of a

3

felony. Puebla confirmed that he had, so Tweedle instructed the deputy to take him into custody for illegal possession of a firearm by a felon. The deputy transported both Rojas and Puebla to the county jail.

The rifle that Puebla provided to Tweedle was equipped with a thermal scope that recorded audio and video. After contacting the rifle's owner and with his consent, Tweedle later downloaded from the scope a recording made on the day of the arrest. The thermal-scope video showed the view from the scope and the conversation near it as the rifle was used to shoot at wild hogs. In reviewing the video, Tweedle identified the voices of Puebla, Bronaugh, and Rojas and determined that Puebla was the person holding and firing the rifle.

A grand jury indicted Puebla for unlawful possession of a firearm by a felon. *See id.*[1] At trial, the trial court admitted Tweedle's body-worn-camera video of the stop and the thermal-scope video. Tweedle testified as to the contents of the videos and recounted the events of the evening. This appeal followed Puebla's conviction and sentence.

### III. DISCUSSION

Puebla presents three issues on appeal. In his first issue, he argues that the trial court abused its discretion in admitting the thermal-scope video. In his second issue,

---

[1]Unlawful possession of a firearm by a felon is a felony of the third degree. Tex. Penal Code Ann. § 46.04(e). Because Puebla pled true to allegations of prior felony convictions, the offense was enhanced to a felony of the second degree. *Id.* § 12.42(a).

4

he argues that the trial court erred by admitting the body-cam video of the stop in violation of his Fifth Amendment right against self-incrimination. In his third issue, he argues that the trial court erred by admitting both videos in violation of his Sixth Amendment right to confront witnesses against him.

## A. Preservation of Error as to the Thermal-Scope Video

Puebla argues that the State improperly authenticated the thermal-scope video because the State did not establish the date it was made and failed to establish that Tweedle was an expert in voice identification, was "connected" with those speaking in the recording, or had "the personal relationship to fully be able to recognize the voices in the video."[2] The State argues that Puebla did not preserve error as to the thermal-scope video and so forfeited the issue on appeal. We agree.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). Because it is a systemic requirement, this court should independently

---

[2]Puebla also alleges the exhibit was improperly authenticated because it contains only audio, not video. However, the recording contains both video and audio.

review error preservation, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Dixon*, 595 S.W.3d at 223.

At trial, the State offered the thermal-scope video into evidence. Puebla stated that he had no objection to the video and the court admitted it into evidence. The State played the recording for the jury. Puebla did not object to its publication.

Because Puebla presented no request, objection, or motion to the trial court, the issue was not preserved for review. *Id.*

Puebla's reply brief addresses the issue of preservation in a single sentence. Without citation to authority, he states that he "would supply that trial counsel was ineffective for failing to object to this meritorious issue and the issue presented is so grave, that even under a fundamental error standard, Appellant prevails." He addresses neither ineffective assistance of counsel nor fundamental error in the remainder of his reply. Because the reply does not contain a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record" as to these arguments, they are also not properly before us for review. Tex. R. App. P. 38.1(i); *see Gonzalez v. State*, 616 S.W.3d 585, 587 (Tex. Crim. App. 2020); *see also Barrios v. State*, 27 S.W.3d 313, 322 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("Pointing out the *absence* of an appellant's argument does not raise the argument or entitle appellant to assert that argument for the first time in his reply brief.").

Because Puebla did not put the alleged error before this court for review, we overrule his first issue.

**B.     The Body-Cam Video and Puebla's Fifth Amendment Rights**

In his second issue, Puebla argues that the trial court violated his Fifth Amendment right against self-incrimination when it overruled his trial objection and admitted Tweedle's body-cam video because Tweedle did not warn him of his rights before he made incriminating statements. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). Because the video was not the product of custodial interrogation, the duty to warn under *Miranda* did not apply so we will overrule this issue.

### 1.  Standard of Review

We apply the same bifurcated standard of review to a trial court's ruling on a motion to suppress evidence as to a trial objection based on an alleged Fifth Amendment violation, as was the case here. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019); *see Ogg v. State*, No. 14-18-01028-CR, 2020 WL 1855286, at *3 (Tex. App.—Houston [14th Dist.] Apr. 14, 2020, no pet.) (mem. op., not designated for publication). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281.

When reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When a trial court denies a motion to suppress and does not enter findings of fact, we assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Herrera v. State*, 241 S.W.3d 520, 527 (Tex. Crim. App. 2007). The party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 818.

### 2. Applicable Law

An accused's statements produced by custodial interrogation are inadmissible as evidence unless the accused is first warned of his rights under *Miranda*. *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612; *see* Tex. Code Crim. Proc. Ann. art. 38.22. "Custodial interrogation" refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612. Thus, an officer's obligation to give the warnings is triggered only when a person is in custody. *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1528 (1994).

8

Courts determine whether a person is in custody by examining all the circumstances surrounding the interrogation and resolving whether law enforcement formally arrested the person or, alternatively, restrained the person's freedom of movement to the degree associated with a formal arrest. *Id.*, 114 S. Ct. at 1529. The ultimate inquiry is whether, given the circumstances surrounding the interrogation, a reasonable person would have felt that he was not free to leave. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021) (first citing *Stansbury*, 511 U.S. at 322, 114 S. Ct. at 1528; and then citing *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)). The "reasonable person" standard presupposes an innocent person. *Id.*

> Four general situations may constitute custody:
>
> (1) the suspect is physically deprived of [his] freedom of action in any significant way, (2) a law enforcement officer tells the suspect that [he] cannot leave, (3) law enforcement officers create a situation that would lead a reasonable person to believe [his] freedom of movement has been significantly restricted, or (4) there is probable cause to arrest, and law enforcement officers do not tell the suspect that [he] is free to leave.

*Id.* at 167–68 (citing *Dowthitt*, 931 S.W.2d at 255). Regarding the first three situations, the restriction upon freedom of movement must amount to the degree associated with an arrest, not merely an investigative detention. *Id.* at 168. Thus, a driver who has been temporarily detained pursuant to a traffic stop is not in custody for purposes of *Miranda*. *Campbell v. State*, 325 S.W.3d 223, 233 (Tex. App.—Fort Worth 2010, no pet.) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150 (1984)).

9

Regarding the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect. *Wexler*, 625 S.W.3d at 168. But this does not automatically establish custody; custody is established only if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to a degree associated with an arrest. *Id.*; *Dowthitt*, 931 S.W.2d at 255.

The determination of whether a suspect is in custody must be based entirely on the objective circumstances surrounding the questioning. *Dowthitt*, 931 S.W.2d at 254. Law enforcement's subjective intent and the suspect's subjective belief are irrelevant except to the extent manifested in the words or actions of law enforcement officials. *Id.*

### 3. Application to the body-cam video

The defendant bears the initial burden to establish that his statements were the product of a custodial interrogation. *Wexler*, 625 S.W.3d at 168. Puebla argues that the stop was custodial because Tweedle believed a Class C misdemeanor, "at a minimum," had been committed when he approached the truck and because Tweedle instructed the three men to remain in the vehicle. Puebla makes the conclusory statement that he was "physically deprived of his freedom to leave." Puebla cites no examples of physical restraint in the record.

In this case, neither party requested—and the judge did not enter—findings of fact related to the overruling of Puebla's objection to the introduction of the body-cam video, so we view the evidence in the light most favorable to the ruling and assume the

trial court made implicit findings of fact supported by the record. *Herrera*, 241 S.W.3d at 527.

Puebla was not detained during Tweedle's initial investigation. Tweedle activated his emergency lights and approached the truck with the intent to investigate suspected criminal offenses. He had heard a gunshot from the direction of the vehicle and had come across Bronaugh's truck with its lights off and with Rojas riding in the back with a rifle. When he first approached the truck, Tweedle was investigating the potential criminal act of hunting from a roadway, but he did not have probable cause to arrest anyone. *See Berkemer*, 468 U.S. at 442, 104 S. Ct. at 3151; *Campbell*, 325 S.W.3d at 235; *Arthur v. State*, 216 S.W.3d 50, 57 (Tex. App.—Fort Worth 2007, no pet.). During this initial phase of the investigation, Puebla was not in custody.

Tweedle continued to investigate. Tweedle observed one rifle in the bed of the truck with Rojas and one in the cab of the truck that Puebla admitted having fired that evening. Tweedle secured the weapons away from the truck but did not handcuff or otherwise physically restrain Puebla during the investigation. Puebla has offered no facts to suggest that during the investigatory stop he was physically deprived of his freedom in any significant way and so has not shown that he was subject to a custodial interrogation. *See Campbell*, 325 S.W.3d at 233. Puebla was also not in custody during this phase of the investigation.

Puebla argues that Tweedle told him that he was not free to leave and thereby restricted his freedom of movement to the degree associated with a formal arrest. When

11

he first encountered the vehicle, Tweedle identified himself as a State Game Warden and told the men to stay where they were in the truck, where he could see them. Tweedle did not tell the men that they were under arrest and did not draw his weapon or otherwise demonstrate force with the instruction. Although Tweedle's instruction may have restricted the men's freedom of movement, a person under detention—as opposed to arrest—may have his freedom of movement restricted to a lesser degree. *Wexler*, 625 S.W.3d at 166. Tweedle's instruction to remain in the truck did not restrict Puebla's movement to the degree associated with a formal arrest. *See id.*

Further, during the investigation but before discovering that Puebla had been convicted of a felony, Tweedle informed Puebla that he would receive a citation and be released to drive the truck. Thus, before Puebla informed Tweedle of his prior felony conviction, Tweedle had communicated a clear intent to release him. *See Bartlett v. State*, 249 S.W.3d 658, 670 (Tex. App.—Austin 2008, pet. ref'd) (citing *Stansbury*, 511 U.S. at 325, 114 S. Ct. at 1530).

Puebla also argues that the circumstances constituted an arrest because Tweedle believed Puebla was not free to leave during the questioning. But Tweedle's subjective intent is not determinative, and he did not communicate or manifest his subjective belief. *See Herrera*, 241 S.W.3d at 525–26; *Dowthitt*, 931 S.W.2d at 254; *Majoro v. State*, Nos. 02-15-00256-CR, 02-15-00390-CR, 02-15-00391-CR, 2016 WL 3364800, at *7 (Tex. App.—Fort Worth June 16, 2016, pet. ref'd) (mem. op., not designated for publication).

12

With respect to Puebla, we hold that the encounter did not constitute custody for purposes of *Miranda* until Tweedle arrested Puebla for unlawful possession of a firearm. *See Berkemer*, 468 U.S. at 442, 104 S. Ct. at 3151; *State v. Stevenson*, 958 S.W.2d 824, 829 (Tex. Crim. App. 1997). But after his arrest, Puebla made no further statements that were recorded on the video or recounted in later testimony.

Based on the objective circumstances, we conclude that Puebla's statements heard on Tweedle's body-cam video were not the product of a custodial interrogation but rather the result of an investigative detention, and so they did not trigger the requirement that Tweedle inform Puebla of his rights. Therefore, the video was not subject to suppression under *Miranda*, and the trial court did not err by overruling Puebla's objection. *See* Tex. Code Crim. Proc. Ann. art. 38.22; *Cox v. State*, No. 02-24-00045-CR, 2025 WL 387811, at *4 (Tex. App.—Fort Worth Jan. 30, 2025, pet. ref'd) (mem. op., not designated for publication). Accordingly, we overrule Puebla's second issue.

## C. Both Videos and Puebla's Sixth Amendment Right to Confrontation

In his third issue, Puebla argues that the trial court erred by admitting the body-worn camera and thermal-scope videos in violation of his Sixth Amendment right to confront witnesses against him. Thus, he complains about the trial court's admission of Branaugh's and Rojas's statements on them because neither man testified at trial. Because Puebla did not preserve error as to the thermal-scope video and because admission of the body-cam video was harmless, we will overrule this issue.

13

### 1. Applicable Law

The Sixth Amendment's Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In essence, that clause bars admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable to testify and the defendant has had a prior opportunity for cross-examination. *See Davis v. Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 2273 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365 (2004)).

There is no single, well-established definition of what constitutes a "testimonial" statement under this standard. *Martinez v. State*, No. 02-18-00447-CR, 2019 WL 4678426, at *3 (Tex. App.—Fort Worth Sept. 26, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374). The Confrontation Clause and the core of its application "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" *Id.* (citing *Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364).

In essence, the nomenclature "testimonial" is descriptive. *Id.* at *4. A statement is testimonial when it packages a statement relevant to the issues in a criminal trial for delivery as testimony at that later trial:

> "[T]estimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013). In determining whether a statement is testimonial, we review the objective purpose of the statement,

14

> not the declarant's expectations. *Coronado v. State*, 351 S.W.3d 315, 324 (Tex. Crim. App. 2011). Statements are testimonial when the circumstances objectively indicate that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Id.*

*Florez v. State*, No. 02-16-00195-CR, 2017 WL 2471095, at *5 (Tex. App.—Fort Worth June 8, 2017, no pet.) (mem. op., not designated for publication).

One factor that determines whether an objective observer could conclude that a statement is being packaged for use at a trial is to whom the statement is made: a statement made to non-law-enforcement personnel is less likely to be considered testimonial. *Wear v. State*, No. 02-16-00170-CR, 2017 WL 929529, at *3 (Tex. App.—Fort Worth Mar. 9, 2017, no pet.) (mem. op., not designated for publication) (citing and quoting *Ohio v. Clark*, 576 U.S. 237, 245–47, 135 S. Ct. 2173, 2180–82 (2015)).

If the challenged statement is testimonial, the denial of physical, face-to-face confrontation is reviewed for harm. *Coy v. Iowa*, 487 U.S. 1012, 1021, 108 S. Ct. 2798, 2803 (1988); *see Chapman v. California*, 386 U.S. 18, 23, 87 S. Ct. 824, 828 (1967). Constitutional error is harmful unless a reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction. Tex. R. App. P. 44.2(a). The State has the burden, as beneficiary of the error, to prove that the error is harmless beyond a reasonable doubt. *Haggard v. State*, 612 S.W.3d 318, 328 (Tex. Crim. App. 2020). If we are unable to conclude beyond a reasonable doubt that the error did not contribute to the conviction, we must reverse and order a new trial. *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010).

In the context of the denial of physical confrontation, the harm analysis "cannot include consideration of whether the witness'[s] testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation" because "such an inquiry would obviously involve pure speculation." *Coy*, 487 U.S. at 1021–22, 108 S. Ct. at 2803. Instead, harm must be determined based on "the remaining evidence." *Id.* at 1022, 108 S. Ct. at 2803.

While our determination should consider "any circumstance apparent in the record that logically informs the harm issue," a number of factors can aid our analysis: (1) importance of the witnesses' testimony to the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, and (4) the overall strength of the prosecution's case. *Haggard*, 612 S.W.3d at 329; *Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006).

### 2. Preservation and custodial nature of the statements on the thermal-scope video

As we have already noted, Puebla did not object to the admission of the thermal-scope video. Confrontation Clause claims are subject to preservation requirements. *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010). Even if he had preserved error, though, the thermal-scope video was clearly not "testimonial" under the Sixth Amendment because it did not contain any statements made to law enforcement personnel and was not made in a situation that would indicate it was intended to create

16

a court record. *See Burch*, 401 S.W.3d at 636. Because the scope video is not testimonial, even had Puebla preserved the error for our review, its admission did not violate Puebla's right to confrontation.

### 3. Custodial nature of the statements on the body-cam video

Tweedle's body-cam video was made during his investigation of a suspected criminal offense. Although Puebla was not subject to custodial arrest for Fifth Amendment purposes, the video was clearly created as part of an adversarial investigation of suspected criminal activity, and a reasonable declarant would recognize that his statements could be used in future criminal prosecutions, indicating that the statements on it are testimonial in nature. *See Haggard*, 612 S.W.3d at 329; *Fischer v. State*, 252 S.W.3d 375, 382–83 (Tex. Crim. App. 2008); *see also Zynda v. State*, No. 2-06-426-CR, 2007 WL 2152658, at *4 (Tex. App.—Fort Worth July 26, 2007, no pet.) (mem. op., not designated for publication) (comparing Fifth Amendment and Sixth Amendment standards of applicability). Because the statements made by Bronaugh and Rojas in the body-cam video were testimonial, we must analyze whether admission of the video was harmless. *See Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374.

### 4. Harm analysis

In the video, neither Bronaugh nor Rojas discussed Puebla's criminal record. Although Bronaugh told Tweedle that the group had been hunting that evening and that a shot was fired, neither Bronaugh nor Rojas informed Tweedle that Puebla had been in possession of a firearm or had been convicted of a felony. Bronaugh's and

17

Rojas's statements therefore were not determinative of the elements of the offense for which Puebla was actually charged, illegal possession of a firearm by a felon. Bronaugh's and Rojas's statements in the video were of low importance to the prosecution's case. *See Haggard*, 612 S.W.3d at 329.

Although Puebla acknowledged possessing the rifle and was holding it in the body-cam video, Tweedle also testified that he saw Puebla holding the rifle and that Puebla said he had been firing the rifle earlier. Tweedle first received notice that Puebla may have been convicted of a felony from the county dispatch, and only then did Puebla confirm that he had been. The video, as relevant to the prosecution's case, was cumulative of Tweedle's testimony. *See id.*

The thermal-scope video also corroborated Puebla's possession of a firearm earlier that evening. Although the recording captured statements from all three men, Tweedle testified that he determined that Puebla was holding the rifle when it was made. The recording captured the sound of several gunshots and discussion among the three men. Thus, to the extent that the body-cam video contains testimonial statements by Bronaugh and Rojas indicating Puebla had been in possession of a firearm, they are cumulative of other evidence in the record, including the thermal-scope video and Tweedle's testimony. *See id.*

Because Bronaugh's and Rojas's statements recorded in the video were of low importance to the prosecution's case, were cumulative of other evidence in the record, and were corroborated by other evidence as to material points, and because the

18

prosecution's case was strong as to the elements of the offense alleged, it appears beyond a reasonable doubt that the video did not contribute to the verdict obtained, so the trial court's admission of the out-of-court testimonial statements of Bronaugh and Rojas on Tweedle's body-cam video was harmless. *See Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). Accordingly, we overrule Puebla's third issue.

## IV. CONCLUSION

Having overruled each of Puebla's three issues, we affirm the judgment of the trial court.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 17, 2025